[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
September 10, 2004
THOMAS  K. KAHN
CLERK

No. 03-13275

Agency No. A76-231-987

FIDENCIO RESENDIZ-ALCARAZ,

Petitioner,

versus

U.S. ATTORNEY GENERAL,
John Ashcroft,

Respondent.

_____

Petition for Review of an Order
of the Board of Immigration Appeals

_____

**(September 10, 2004)**

Before BLACK and MARCUS, Circuit Judges, and SMITH[*], District Judge.

BLACK, Circuit Judge:

_____

[*] Honorable Fern M. Smith, United States District Judge for the Northern District of California, sitting by designation.

Petitioner Fidencio Resendiz-Alcaraz, an alien present in the United States without being admitted or paroled, was convicted of a controlled substance offense in state court. The conviction was expunged after Petitioner served one year of probation. Subsequently, the Immigration and Naturalization Service (INS) initiated removal proceedings against Petitioner, which resulted in an order of removal that was affirmed by the Board of Immigration Appeals (BIA). Petitioner now asks this Court to review the removal order, contending he is entitled to cancellation of removal because his state court conviction was expunged. We conclude the state conviction is indeed a "conviction" for immigration purposes and, therefore, 8 U.S.C. § 1252(a)(2)(C) deprives us of subject matter jurisdiction over the petition. Accordingly, we affirm the decision of the BIA.

## I. FACTUAL BACKGROUND

Petitioner is a citizen of Mexico who entered the United States without inspection in 1984. On July 3, 1994, he was detained by the Pike County, Missouri, Sheriff's Department for driving with a suspended driver's license and possession of less than 35 grams of marijuana. He pled guilty to the possession charge, a class A misdemeanor under Missouri law. The Pike County Circuit Court entered a suspended sentence for one year unsupervised probation. After a

year, the court entered an order to close the record pursuant to Mo. Rev. Stat. § 610.105, expunging the conviction.

On July 13, 2001, the INS filed a Notice to Appear (NTA), charging Petitioner as being subject to removal from the United States pursuant to 8 U.S.C. § 1182(a)(6)(A)(i), as an alien present in the United States without being admitted or paroled, and § 1182(a)(2)(A)(i)(II), as an alien convicted of a controlled substance violation.[1]  At the removal hearing, Petitioner admitted the allegations contained in the NTA and the immigration judge sustained the charges of removal. Petitioner then submitted an application for cancellation of removal pursuant to 8 U.S.C. § 1229b(b).

Under § 1229b(b), an alien may avoid removal from the United States and adjust his status to that of a lawful permanent resident (LPR) if he:  (1) had continuous physical presence in the United States for ten years; (2) is of good moral character; (3) has not been convicted of an offense under 8 U.S.C. §§ 1182(a)(2), 1227(a)(2), or 1227(a)(3); and (4) shows that he or his citizen or

---

[1] The record reveals that Petitioner pled guilty in 1995 to carrying a concealed firearm in violation of Florida statute.  The Dade County Circuit Court ordered that adjudication of guilt be withheld and placed Petitioner on probation for one year.  The INS did not seek removal based on the concealed firearm conviction.

LPR spouse, parent, or child would suffer "exceptional and extremely unusual hardship."  8 U.S.C. § 1229b(b)(1).

The INS moved to pretermit Petitioner's application, arguing Petitioner was ineligible for cancellation of removal because his Missouri conviction was for an offense under 8 U.S.C. § 1182(a)(2).  On November 27, 2001, the immigration judge granted the agency's motion to pretermit.  Petitioner then filed a motion for reconsideration and a motion to suppress his admission of removability based on the state conviction.  The immigration judge granted the motion to suppress, but denied the motion for reconsideration based on the BIA's decision in *In re Roldan-Santoyo*, 22 I. & N. Dec. 512 (BIA 1999), *order vacated sub nom. Lujan-Armendariz v. INS*, 222 F.3d 728 (9th Cir. 2000), which held that an expunged state conviction is treated as a "conviction" for immigration purposes under 8 U.S.C. § 1101(a)(48)(A).  *Id.* at 521.  The BIA affirmed the immigration judge's decision without opinion on May 30, 2003.  This petition followed.

## II.  DISCUSSION

We first address our jurisdiction to consider the merits of the petition.  We then address Petitioner's constitutional arguments.

A. *Jurisdiction*

Before we can proceed to the merits of the petition, we must first consider whether we have subject matter jurisdiction to hear the petition at all. We review subject matter jurisdiction de novo. *Garcia v. Attorney Gen.*, 329 F.3d 1217, 1220 (11th Cir. 2003).

Our jurisdiction to review final orders of removal is significantly limited by 8 U.S.C. § 1252(a)(2)(C):

> Notwithstanding any other provision of law, no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in section 1182(a)(2) or 1227(a)(2)(A)(iii), (B), (C), or (D) of this title, or any offense covered by section 1227(a)(2)(A)(ii) of this title for which both predicate offenses are, without regard to their date of commission, otherwise covered by section 1227(a)(2)(A)(i) of this title.

It is well-established that this provision strips us of jurisdiction to review a final order of removal of "(1) an alien (2) who is removable (3) because he committed a criminal offense enumerated in the statute." *Fernandez-Bernal v. Attorney Gen.*, 257 F.3d 1304, 1308 (11th Cir. 2001) (citation and internal quotation marks omitted). One method of determining whether an alien committed a covered offense—and the method pertinent in this case—is through the fact of conviction. *Id.* at 1308–09. Of course, we retain jurisdiction to determine the underlying

5

jurisdictional facts at issue. *See Galindo-Del Valle v. Attorney Gen.*, 213 F.3d 594, 597–98 (11th Cir. 2000).

Petitioner admits he is an alien, but disputes that he is removable because he committed a covered offense. In his view, he did not "commit[] a criminal offense" as specified in § 1252(a)(2)(C), as his state conviction was expunged under a rehabilitation scheme similar to the Federal First Offender Act (FFOA), 18 U.S.C. § 3607.[2]

We disagree. State convictions satisfy § 1252(a)(2)(C), regardless of whether expungement occurred. We conclude Petitioner is removable because he committed a covered offense and, accordingly, we lack jurisdiction to review the merits of the petition.[3]

---

[2] Under § 3607, if a defendant is found guilty of 21 U.S.C. § 844 (simple possession of a controlled substance), and the defendant is a first offender, the federal judge may:

> with the consent of such person, place him on probation for a term of not more than one year without entering a judgment of conviction. At any time before the expiration of the term of probation, if the person has not violated a condition of his probation, the court may, without entering a judgment of conviction, dismiss the proceedings against the person and discharge him from probation. At the expiration of the term of probation, if the person has not violated a condition of his probation, the court shall, without entering a judgment of conviction, dismiss the proceedings against the person and discharge him from probation.

18 U.S.C. § 3607(a). If a conviction is expunged under this provision, it "shall not be considered a conviction for the purpose of a disqualification or a disability imposed by law upon conviction of a crime, or for any other purpose." *Id.* § 3607(b). Thus, a conviction expunged pursuant to the FFOA is not treated as a conviction under federal law.

[3] We decline to decide the jurisdictional issue based on Petitioner's "admission"—through his guilty plea—to committing the offense of simple possession. *See*

6

Some background concerning the BIA's fluid definition of "conviction" is useful before addressing Petitioner's argument. Prior to enactment of the FFOA, the BIA's settled policy was to disregard the expungement of drug convictions. *See, e.g.*, *Matter of A-F-*, 8 I. & N. Dec. 429, 445–46 (BIA, A.G. 1959). After the enactment of the FFOA, the BIA ruled that a first-time drug possession offense expunged under the FFOA was not a conviction for immigration purposes. *Matter of Werk*, 16 I. & N. Dec. 234, 236 (BIA 1977). This rule gradually was expanded to aliens with state convictions similar to those covered by the FFOA.[4] *See In re Manrique*, 21 I. & N. Dec. 58, 64 (BIA 1995). Specifically, the BIA in *Manrique* held "that an alien who has been accorded rehabilitative treatment under a state statute will not be deported if he establishes that he would have been eligible for federal first offender treatment under the provisions of 18 U.S.C. § 3607(a) (1988) had he been prosecuted under federal law." *Id.* Thus, under *Manrique*, a drug

---

*Fernandez-Bernal*, 257 F.3d at 1310 ("Fernandez-Bernal 'is removable' within the meaning of § 1252(a)(2)(C) because at his hearing before the immigration judge and at oral argument before this Court, he admitted, through his counsel, to committing the offense of possession of cocaine.") (footnote omitted). Unlike *Fernandez-Bernal*, the immigration judge in this case granted Petitioner's motion to suppress his admission of removability under § 1182(a)(2)(A)(i)(II). Arguably, this motion extended to Petitioner's admission of facts supporting the charge of removal. In any event, we find § 1252(a)(2)(C) deprives us of jurisdiction over the petition. *See infra* Part II(B) & (C).

[4] For a comprehensive treatment of the history of the BIA's definition of "conviction" for immigration purposes, see generally *In re Roldan-Santoyo*, 22 I. & N. Dec. 512 (BIA 1999), *order vacated sub nom. Lujan-Armendariz v. INS*, 222 F.3d 728 (9th Cir. 2000).

conviction expunged under state law would not be considered a conviction for immigration purposes if (1) the alien was convicted of simple drug possession; (2) it was a first offense; (3) the alien had not previously received first-offender status; and (4) the court entered an order pursuant to a state rehabilitative statute under which the alien's conviction was deferred or dismissed upon successful completion of the probation program. *Id.* Petitioner insists that his expunged state conviction satisfies the *Manrique* requirements and argues for application of *Manrique* in this case.[5]

*Manrique*, however, was decided in 1995. The next year, Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub. L. No. 104-208, 110 Stat. 3009 (1996), which became effective on April 1, 1997.

Section 322(a) of IIRIRA, codified at 8 U.S.C. § 1101(a)(48)(A), defined the term "conviction" as follows:

> The term "conviction" means, with respect to an alien, a formal judgment of guilt of the alien entered by a court or, if adjudication of guilt has been withheld, where—

---

[5] In his brief and at oral argument, Petitioner repeatedly requests the protection of the FFOA itself. This is meritless—Petitioner was never subject to a federal conviction. *See* 18 U.S.C. § 3607(a) (permitting expungement of convictions under 21 U.S.C. § 844). It is clear from his arguments, however, that Petitioner is in fact arguing for the continued application of the *Manrique* rule. We assume for purposes of this opinion that Petitioner's expunged state conviction would have met the requirements for first offender treatment under *Manrique*.

(i) a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilty, and

(ii) the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed.

The BIA has ruled that this definition of conviction superseded *Manrique*, and that state convictions expunged under a rehabilitative statute are still convictions for immigration purposes. *Roldan-Santoyo*, 22 I. & N. Dec. at 528. The BIA based this holding on both the statutory language and the legislative history surrounding the enactment of IIRIRA. *See id.* at 524–28.

The question thus becomes whether the BIA's interpretation of § 1101(a)(48)(A) is permissible. The BIA's interpretation of the statute is subject to established principles of deference. Thus, "[i]f the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842–43, 104 S. Ct. 2778, 2781 (1984). Where the statute is "silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843, 104 S. Ct. at 2782.

The language of § 1101(a)(48)(A) is quite clear—an alien will be considered to have a conviction for immigration purposes if: (1) a judge or jury found the alien guilty, if the alien entered a guilty plea or a plea of nolo contendere, or if the alien admitted sufficient facts to warrant a finding of guilt; and (2) the judge ordered some form of punishment. Petitioner's state conviction satisfies these conditions. He pled guilty to the possession offense and was subject to a penalty of one year probation. Thus, the statutory definition on its face appears to negate for immigration purposes the effect of state rehabilitative measures that purport to expunge or otherwise remove a conviction. *See United States v. Anderson*, 328 F.3d 1326, 1328 (11th Cir. 2003) (interpreting § 1101(a)(48)(A) in conjunction with U.S.S.G. § 2L1.2(b)(1)(B), and concluding that § 1101(a)(48)(A) "includes a *nolo contendere* plea with adjudication withheld as long as some punishment, penalty, or restraint on liberty is imposed"). The agency is obligated to follow, and has followed, the clear direction of the statute.[6]

_____

[6] As the Seventh Circuit observed:
Until 1996 the Board adapted its approach to state-law deferred dispositions, not as a matter of statutory command, but as a matter of federal common law. It might have changed that approach by the same means it had been adopted: administrative adjudication. Congress took the issue out of its hands in 1996. A statute such as § 1101(a)(48)(A) displaces common law. In the absence of legislation the agency had to find its own way; now the agency must take the statute's path.
*Gill v. Ashcroft*, 335 F.3d 574, 578 (7th Cir. 2003) (internal citations omitted).

Nor are we alone in this conclusion. Several of our sister Circuits have also concluded that § 1101(a)(48)(A) applies to state-expunged convictions. *See Acosta v. Ashcroft*, 341 F.3d 218, 222 (3d Cir. 2003) (stating, in case where petitioner successfully completed a one year probation sentence for a heroin possession charge in state court that would have made him eligible for FFOA relief had he been prosecuted by the federal government, that "[t]his language unambiguously points to the conclusion that the disposition of Acosta's criminal case in [state court pursuant to a state law permitting dismissal of charge after completion of probation without verdict] constitutes a 'conviction'"); *Gill v. Ashcroft*, 335 F.3d 574, 577 (7th Cir. 2003) ("Every court that has considered the subject believes that § 1101(a)(48)(A) governs the handling of repeat offenders and that expungements (or restorations of civil rights) under state law do not negate a 'conviction' for purposes of immigration law."); *Herrera-Inirio v. INS*, 208 F.3d 299, 304–05 (1st Cir. 2000) (noting that the language of § 1101(a)(48)(A) "leaves nothing to the imagination" and that state rehabilitative programs that do not vacate a conviction on the merits "have no bearing in determining whether an alien is to be considered 'convicted' under section 1101(a)(48)(A)."); *Moosa v. INS*, 171 F.3d 994, 1005–06 (5th Cir. 1999) (same); *see also United States v. Zamudio*, 314 F.3d 517, 522 (10th Cir. 2002) (adopting

11

plain meaning of § 1101(a)(48)(A) when interpreting U.S.S.G. § 2L1.2(b)(1));

*United States v. Campbell*, 167 F.3d 94, 98 (2d Cir. 1999) (same).[7]

Having established that the clear language of the statute includes state convictions expunged under state rehabilitative laws, we need go no further with our analysis. *See Harry v. Marchant*, 291 F.3d 767, 772 (11th Cir. 2002) (en banc) ("Where the language of a statute is unambiguous, as it is here, we need not, and ought not, consider legislative history."). Even if were to find the statutory language ambiguous as to expunged sentences (which we do not), we would still find the BIA's construction of the statute permissible.

The BIA has construed § 1101(a)(48)(A) as creating a uniform definition of conviction that is no longer dependent on the vagaries of state law. *Roldan*, 22 I. & N. Dec. at 521 (noting that Congress did not intend different immigration consequences be accorded "to criminals fortunate enough to violate the law in a state where rehabilitation is achieved through the expungement of records

---

[7] Only the Ninth Circuit has hypothesized that expungements might not be convictions under IIRIRA. *Lujan-Armendariz v. INS*, 222 F.3d 728, 746 (9th Cir. 2000) ("We do not believe, however, that Congress intended to eliminate the longstanding rule that when a conviction or finding of guilt has actually been expunged, it may not thereafter be used as the basis for removal."). The Ninth Circuit has since retreated from this position, however, and now recognizes that, except for convictions that would satisfy the *Manrique* requirements, expunged sentences are convictions for immigration purposes. *Murillo-Espinoza v. INS*, 261 F.3d 771, 774 (9th Cir. 2001). The BIA has declined to acquiesce in *Lujan-Armendariz* and will not apply it outside the Ninth Circuit. *In re Salazar-Regino*, 23 I. & N. Dec. 223, 235 (BIA 2002).

evidencing what would otherwise be considered a conviction under [the statute], rather than in a state where the procedure achieves the same objective simply through deferral of judgment"). The BIA's conclusion is in accordance with the Congressional Conference Committee Report accompanying IIRIRA, which indicated Congress's intent to establish a uniform definition of conviction:

> This section deliberately broadens the scope of the definition of "conviction" beyond that adopted by the Board of Immigration Appeals in *Matter of Ozkok*, 19 I & N Dec. 546 (BIA 1988).[8] As the Board noted in *Ozkok*, there exist in the various States a myriad of provisions for ameliorating the effects of a conviction. As a result, aliens who have clearly been guilty of criminal behavior and whom Congress intended to be considered "convicted" have escaped the immigration consequences normally attendant upon a conviction. *Ozkok*, while making it more difficult for alien criminals to escape such consequences, does not go far enough to address situations where a judgment of guilt or imposition of sentence is suspended, conditioned upon the alien's future good behavior. For example, the third prong of *Ozkok* requires that a judgment or adjudication of guilt may be entered if the alien violates a term or condition of probation,

---

[8] *Ozkok* represented the BIA's final attempt to establish a working definition of "conviction" for immigration purposes before IIRIRA was enacted. *Ozkok* offered a three-part definition of "conviction":

> (1) a judge or jury has found the alien guilty or he has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilty;
> (2) the judge has ordered some form of punishment, penalty, or restraint on the person's liberty to be imposed . . . and
> (3) a judgment or adjudication of guilt may be entered if the person violates the terms of his probation or fails to comply with the requirements of the court's order, without availability of further proceedings regarding the person's guilt or innocence of the original charge.

19 I. & N. Dec. 546, 551–52 (BIA 1988).

without the need for any further proceedings regarding guilt or innocence on the original charge. In some States, adjudication may be "deferred" upon a finding or confession of guilt, and a final judgment of guilt may not be imposed if the alien violates probation until there is an additional proceeding regarding the alien's guilt or innocence. In such cases, the third prong of the *Ozkok* definition prevents the original finding or confession of guilt to be considered a "conviction" for deportation purposes. This new provision, by removing the third prong of *Ozkok*, clarifies Congressional intent that even in cases where adjudication is "deferred," the original finding or confession of guilt is sufficient to establish a "conviction" for purposes of the immigration laws.

H.R. Conf. Rep. No. 104-828, at 224 (1996). As the First Circuit has noted, "[t]he emphasis that Congress placed on the *original* admission of guilt plainly indicates that a subsequent dismissal of charges, based solely on rehabilitative goals and not on the merits of the charge or on a defect in the underlying criminal proceeding, does not vitiate that original admission." *Herrera-Inirio*, 208 F.3d at 306.

The statutory language is clear. Even if we did not find the statute to be clear, however, the BIA's interpretation of the statute is based on a permissible construction of the statute. In light of these facts, we find the BIA's interpretation of § 1101(a)(48)(A) eminently reasonable. For these reasons, we reject Petitioner's argument that *Manrique* applies.

We hold that a state conviction is a conviction for immigration purposes, regardless of whether it is later expunged under a state rehabilitative statute, so

14

long as it satisfies the requirements of § 1101(a)(48)(A).[9] Accordingly, Petitioner

is removable because he committed a covered offense, and we lack jurisdiction to

consider his petition.

B. *The Constitutional Challenge*

Regardless of the jurisdictional limits placed on us by § 1252(a)(2)(C),

we retain jurisdiction to evaluate constitutional challenges to IIRIRA. *Fernandez-*

*Bernal*, 257 F.3d at 1311. We therefore now turn to Petitioner's constitutional

arguments. Petitioner challenges the constitutionality of the BIA's interpretation

of § 1101(a)(48)(A) on two bases: equal protection and due process. We address

each in turn.

1. *Equal Protection*

Petitioner argues the agency's interpretation violates equal protection

because an alien prosecuted under federal law and the FFOA may not be subject to

removal, whereas an alien who has been accorded rehabilitative treatment under a

state statute is removable, even if he would have been eligible for federal first

offender treatment under the FFOA. Given that Congress has plenary power to

---

[9] The question of whether the FFOA itself is limited or repealed by § 1101(a)(48)(A) is not before us. We do note, however, that the FFOA has "no residual effect" on the characterization and treatment of state convictions expunged under state rehabilitative statutes. *Gill*, 335 F.3d at 579.

15

pass legislation concerning the admission and exclusion of aliens, *see INS v. Chadha*, 462 U.S. 919, 1000, 103 S. Ct. 2764, 2809 (1984), federal classifications that distinguish among groups of aliens are subject only to rational basis review, *Fernandez-Bernal*, 257 F.3d at 1312.[10]

Petitioner relies on *Lujan-Armendariz*, in which the Ninth Circuit concluded no rational basis exists for treating aliens differently based on the "'mere fortuity' that they happen to have been prosecuted under state rather than federal law." 222 F.3d at 748. We are not persuaded by the court's reasoning in *Lujan-Armendariz*. Rational basis review is not demanding. *See Rodriguez ex rel. Rodriguez v. United States*, 169 F.3d 1342, 1350 (11th Cir. 1999). Rather, a legislative classification subject to rational basis review is accorded a "strong presumption of validity," *Heller v. Doe*, 509 U.S. 312, 319, 113 S. Ct. 2637, 2642 (1993), and review of enactments subject to the rational basis standard must be "a paradigm of judicial restraint," *FCC v. Beach Communications, Inc.*, 508 U.S. 307, 314, 113 S. Ct. 2096, 2101 (1993). Such legislative classifications must be upheld against an equal protection challenge "if there is any reasonably conceivable state of facts

---

[10] In *Fernandez-Bernal*, we found no equal protection violation when an expunged state conviction for simple possession of cocaine served as a basis for removal under § 1182(a)(2)(A)(i)(II), when the sentence received would have made the petitioner ineligible for first offender treatment under the FFOA. 257 F.3d at 1314–17. Because Petitioner here would have been eligible for FFOA treatment had he been prosecuted under federal law, *Fernandez-Bernal* is not directly applicable.

16

that could provide a rational basis for the classification," *id.* at 313, 113 S. Ct. at 2101, and the burden lies on the challenging party to demonstrate that no conceivable basis exists to support the classification, *see Heller*, 509 U.S. at 320–21, 113 S. Ct. at 2643.

As the Third Circuit observed in *Acosta*, a rational basis exists for distinguishing between aliens whose charges are dismissed under the FFOA and those whose charges are dismissed under state rehabilitative statutes:

> Familiar with the operation of the federal criminal justice system, Congress could have thought that aliens whose federal charges are dismissed under the FFOA are unlikely to present a substantial threat of committing subsequent serious crimes. By contrast, Congress may have been unfamiliar with the operation of state schemes that resemble the FFOA. Congress could have worried that state criminal justice systems, under the pressure created by heavy case loads, might permit dangerous offenders to plead down to simple possession charges and take advantage of those state schemes to escape what is considered a conviction under state law.

341 F.3d at 227; *see also Herrera-Inirio*, 208 F.3d at 309 (1st Cir. 2000) (finding that § 1101(a)(48)(A) "rationally advances" the "government's need for a nationally uniform definition of the term 'conviction' for immigration purposes"). We likewise conclude that Congress had a rational basis for distinguishing between federal convictions and state convictions for immigration purposes. Accordingly, Petitioner's equal protection argument fails.

17

2. *Due Process*

Petitioner's procedural due process claim[11] is without merit. Aliens are entitled to be given notice and opportunity to be heard. *See, e.g.*, *Reno v. Flores*, 507 U.S. 292, 306–09, 113 S. Ct. 1439, 1449–51 (1993). In this case, Petitioner was given ample notice of the charges of removal and was aware that the INS sought his removal based on both 8 U.S.C. § 1182(a)(2)(A)(i)(II) and § 1182(a)(6)(A)(i). Likewise, Petitioner was given sufficient opportunity to contest his removability, both before the immigration judge and the BIA, and to contest the agency's characterization of his state conviction for simple possession. *Cf. Chowdhury v. INS*, 249 F.3d 970, 975 (9th Cir. 2001) (concluding petitioner was denied due process where agency sought his removal on grounds not charged in the Notice to Appear). Petitioner thus has not satisfied the requirements of a procedural due process claim.

## III. CONCLUSION

Petitioner's state conviction, although expunged under a state rehabilitative statute, remains a conviction for immigration purposes under § 1101(a)(48)(A). Such treatment does not raise a meritorious constitutional issue. Thus, we find Petitioner is an alien who is removable for committing an offense under 8 U.S.C.

---

[11] Petitioner does not assert a substantive due process claim.

18

§ 1182(a)(2)(A)(i)(II).  Accordingly, we lack jurisdiction to review his petition under 8 U.S.C. § 1252(a)(2)(C).

DISMISSED.